# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER ABERNATHY,<br><br>Plaintiff<br><br>v.<br><br>CONTINENTAL SERVICE GROUP, INC. d/b/a CONSERVE, and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendants | Case No.: 2:17-cv-00636-APG-NJK<br><br>**Order Granting Defendants' Motions for Summary Judgment**<br><br>[ECF Nos. 29, 30] |

In 2016, plaintiff Christopher Abernathy hired Credit Research of Nevada (CRN) to help him with some credit issues. On Abernathy's behalf, CRN disputed several of his accounts as reported on his credit report by defendant Experian Information Solutions, Inc. (Experian), including a debt assigned to Continental Service Group, Inc. (ConServe).

Unhappy with the results of multiple disputes, Abernathy sued Experian and ConServe for violating the Federal Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), and Nevada Deceptive Trade Practices Act (DTPA). Both defendants move for summary judgment and I grant both motions.

## I. BACKGROUND

Abernathy owed the College of Southern Nevada (CSN) $1,158.50 for unpaid tuition, which CSN assigned to ConServe to collect. ECF No. 41-28 at 45–46. Abernathy paid this debt in full directly to CSN on August 26, 2016. *Id.* at 46.

Meanwhile, in July 2016, Abernathy hired CRN to help him address credit issues. ECF No. 29-2 at 68–69, 71. CRN sent a dispute letter to Experian on August 12, 2016 disputing all the negative accounts on Abernathy's credit report. ECF No. 29-1 at 15–16. With respect to the

ConServe account, the letter stated that the account was "not familiar." *Id.* at 15. No supporting documentation was attached to the letter. Experian sent an automatic consumer dispute verification (ACDV) form to ConServe with the dispute reason listed as "001- Not his/hers. Provide complete ID." *Id.* at 22.

After receiving the ACDV, ConServe requested documents validating the debt from CSN. ECF No. 31-1 at 36. ConServe received an itemized account statement and screenshot from the college's record system showing the account was valid and the debt was paid in full. *Id.* at 37–38. ConServe's ACDV response confirmed the validity of the account and reported the account was a valid, paid collection account. *Id.* at 22, 38; ECF No. 29-1 at 22. Thereafter, Experian updated its reporting to show the ConServe account, identified as a "Collection" account, with status of "Paid, Closed" and no balance as of September 2016, the "Date of Status." ECF No. 29-1 at 29; ECF No. 29-2 at 117. The comment section noted that the account was "disputed by consumer." ECF No. 29-1 at 29. In the payment history section, only the month of September 2016 is listed, with a "C" notation meaning "Collection." *Id.* Also in response to this dispute, ConServe sent Abernathy a letter confirming the debt had been paid and including supporting documentation from CRN. ECF No. 31-2 at 17–23.[1]

On September 14, CRN sent Experian another letter disputing Abernathy's negative accounts and stating the ConServe account "was paid and [he] would like it removed." ECF No. 29-1 at 97. The letter did not include any supporting documentation. Experian responded by sending a copy of Abernathy's report showing the account reported as paid and closed. ECF No. 29-2 at 8.

---

[1] ConServe also sent a second, identical letter. ECF No. 31-2 at 24–30.

On October 5, CRN submitted an online dispute on behalf of Abernathy asking Experian to confirm the negative notation in September on the ConServe account. That day, Experian sent a second ACDV to ConServe. *Id.* at 27. The dispute reason stated: "112 – Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information. PLEASE CONFIRM THE NEGATIVE NOTATION IN SEPTEMBER IS CORRECT. I BELIEVE THIS ACCOUNT IS MARKED IN THE WRONG MONTH." *Id.*

ConServe verified the account information and updated Abernathy's address. ECF No. 31-1 at 40. It responded to the ACDV on October 6, reporting the account should be marked as a paid collection account with zero balance as of that day. *Id.*; ECF No. 29-2 at 27. That same day, Experian sent Abernathy a new version of his report in response to his dispute. *Id.* at 31. The report showed the ConServe account as a collection account that was paid and closed, with a status date of October 2016 and the payment history showing a "C" notation in October 2016. *Id.*

On November 2, CRN sent a third dispute letter to Experian. ECF No. 41-22. The letter again stated the ConServe account had been paid and requested its removal. *Id.* In response, Experian sent Abernathy a copy of his credit report, which showed the account was closed and paid. ECF No. 29-2 at 46. On December 16, 2016, ConServe sent Abernathy a letter confirming it had sent him documentation validating the debt. ECF No. 31-2 at 31.

## II. <u>ANALYSIS</u>

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

*A. Experian's Motion for Summary Judgment*

Abernathy brings two claims against Experian. The first is for negligently and willfully violating the FCRA. The second is for violating the DTPA. Experian moves for summary judgment on both claims.

1. <u>FCRA</u>

Abernathy alleges Experian violated sections 1681e(b) and 1681i(a) of the FCRA by failing to maintain reasonable procedures to ensure accuracy in its credit reports and failing to conduct a sufficient reinvestigation of the ConServe account. Experian argues it followed reasonable procedures and its investigation was adequate. It also contends Abernathy has no evidence of actual damages to support his negligence claim, and cannot show Experian acted willfully to support his claim for statutory damages. Abernathy responds that Experian's reports inaccurately showed his account as a paid collection account and included a notation of

collection in September or October, when the debt was paid in August.  He contends Experian's reliance on ACDVs was unreasonable and a willful violation of the FCRA.

### i. Negligent Noncompliance

For negligent violations, the FCRA permits recovery of "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o.  "The FCRA does not presume actual damages for a negligent . . . failure to comply with any of its requirements." *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1122 (D. Nev. 2008).  The plaintiff "bears the burden of proving that his damages were, in fact, caused by" the defendant's violation. *Id.*

Experian argues Abernathy's claim for negligent FCRA violations must fail because he has produced no evidence of any cognizable actual damages.  It contends Abernathy admitted in his deposition that he had no damages and never provided evidence of damages in written discovery.  Abernathy responds that his deposition testimony should be excluded because he was asked sarcastic, leading questions and the testimony is either irrelevant or prejudicial, and that his statements regarding damages in an affidavit prepared in support of his opposition is sufficient evidence to raise a genuine issue of material fact.

When asked at his deposition if he experienced any denials of credit, rental opportunities, or job opportunities, or emotional distress, Abernathy answered he did not. *See* ECF No. 29-2 at 87–90.  Additionally, the deposition video does not show Experian's counsel asking questions condescendingly or sarcastically. *See* ECF No. 53.  Rather, when asked a straightforward question about whether he sustained emotional damages as a result of the reporting of the ConServe account, Abernathy laughs and responds no. *Id.* at 1:06:50.  Abernathy does not appear to be confused or embarrassed by any of the straightforward questions asked, nor did he ask for clarification of any of the questions he allegedly found confusing.

5

Abernathy's counsel did not object to any question at the deposition, thus waiving the argument that the questions were improper. Fed. R. Civ. P. 32(d)(3)(B) ("An objection to an error or irregularity at an oral examination is waived if . . . it relates to the manner of taking the deposition, the form of a question or answer, . . . a party's conduct, or other matters that might have been corrected at that time; and . . . it is not timely made during the deposition."). And contrary to Abernathy's argument, his testimony about purported damages is neither irrelevant nor prejudicial. This testimony is directly relevant to Abernathy's claims and he has not shown it is prejudicial (other than the fact that he appears to negate an element of his own claim). Abernathy's argument regarding the least sophisticated consumer standard is similarly misguided. That standard is used to determine whether conduct violates the FDCPA. *See Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). It has no bearing on Abernathy's deposition testimony. Therefore, I will not disregard Abernathy's deposition testimony.

In a declaration in support of his opposition to summary judgment, Abernathy states he "lost many nights [sic] sleep" over the reporting of the ConServe account and was "very depressed." ECF No. 41-1 at 7. He states he did not understand the meaning of some of the questions and would have felt embarrassed to answer questions truthfully. *Id.* at 7–8. Finally, Abernathy states he received a higher mortgage rate in early 2017 than he otherwise would have been able to obtain, but does not say why he was denied a lower rate. *Id.* at 8.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quotations omitted). "This is because . . . if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting

his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). Although this rule should be applied with caution, it is triggered if I find "the inconsistency between a party's deposition testimony and subsequent affidavit [to be] clear and unambiguous." *Id.*

At his deposition, Abernathy testified that he had not suffered any actual damages as a result of the reporting of the ConServe account. In his declaration, Abernathy states he realized "mistakes in [his] testimony" when preparing the declaration with the assistance of his counsel and did in fact suffer actual damages. ECF No. 41-1 at 6. Abernathy "is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence." *Yeager*, 693 F.3d at 1081. This is not the case here, where Abernathy's declaration provides directly contradictory information about a major element of his case.[2]

The clear disparity between Abernathy's deposition testimony and his declaration show that the declaration is a self-serving attempt to manufacture issues of fact to defeat summary judgment. As such, I will not credit Abernathy's declaratory statements regarding damages. Therefore, Abernathy has not produced evidence showing he suffered actual damages from any

---

[2] One possible minor inconsistency is Abernathy's testimony about a property he began renting in September 2016. In the deposition transcript, Experian's counsel appears to ask about "Trent Property Management." ECF No. 41-28. In his declaration, Abernathy states that he was not asked about "Triumph Property Management," his actual landlord. ECF No. 41-1 at 6. He then goes on to say that "Trent" told him he would not be approved for a lease. *Id.* However, Abernathy was asked about Triumph—"Trent" is a result of mis-transcribing. *See* ECF Nos. 53 at 1:04:50; 52-3 at 20 (showing "APPFOLIO" record request and listing the reason as "Rental on behalf of TRIUMPH PROPERTY MANAGEM"). Thus, rather than clarifying his deposition testimony, Abernathy's declaration introduces more confusion.

7

alleged Experian FCRA violation, and I grant Experian summary judgment on Abernathy's claim of negligent FCRA violations.

### ii. Willful Noncompliance

To state a claim for statutory damages under § 1681n(a), Abernathy must show Experian willfully harmed him or acted with reckless disregard of its FCRA obligations. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–60 (2007). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

Section § 1681e(b) states that whenever a CRA "prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Section 1681i(a) requires CRAs to conduct a "reasonable reinvestigation" of information disputed by a consumer.

Experian argues there is no evidence it violated the FCRA, let alone willfully. It contends that relying on ACDVs where there is no reason to question the reliability of the furnisher's information is not an objectively unreasonable reading of the statute. Abernathy argues Experian willfully violated the FCRA by relying on ACDVs for its reinvestigation. He contends reliance on the ACDV process is deficient as a matter of law to establish a reasonable reinvestigation.

Abernathy relies on a single case to support his position that reliance on ACDVs is unreasonable and insufficient as a matter of law, *Bradshaw v. BAC Home Loan Serv., LP*, 816 F. Supp. 2d 1066 (D. Or. 2011). The court in that case held that "where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of

law for the agency to simply verify the creditor's information through the ACDV process without additional investigation." *Bradshaw*, 816 F. Supp. 2d at 1073–74 (citing *Saenz v. TransUnion, LLC*, 621 F. Supp. 2d 1074, 108–84 (D. Or. 2007)). In *Bradshaw*, the defendant CRAs had received supporting documentation with the plaintiffs' letters disputing the accuracy of information in their reports. The court held that a reasonable jury could find that the CRAs' reinvestigations were unreasonable because they did not provide detailed descriptions of the disputes or supporting evidence to the information furnishers. *Id.* at 1075.

The situation here is distinguishable. Abernathy's first dispute letter stated only that the ConServe account was "not familiar" and did not include any evidence showing the account was not his. Experian's ACDV request asked ConServe to confirm the account was Abernathy's, which ConServe did, in addition to updating the account to show it was paid. The online dispute asked for confirmation of the date of the negative notation and did not include any supporting documentation to show the date the debt was paid. Experian's ACDV included what appears to be Abernathy or CRN's dispute language.[3]

Experian did not fail to include any information provided by Abernathy in its ACDV requests, nor was it provided any documentation that would put it on notice that ConServe's information may be suspect. Abernathy has not shown that Experian's reliance on ACDVs was unreasonable in this case. *See Anthony v. Experian Info. Sols., Inc.*, No. 2:14-cv-01230-MCE-EFB, 2017 WL 1198499, at *6–7 (E.D. Cal. Mar. 31, 2017) (finding reliance on ACDVs to be reasonable as a matter of law where the plaintiff "failed to provide evidence that could affirmatively demonstrate [Experian] was on notice of fraud before it conducted its

---

[3] The actual online dispute was not produced by either party, but both agree as to its contents.

reinvestigation, or that there was any reason to believe the furnishers' information was suspect"); *Ghazaryan v. Experian Info. Sols., Inc.*, No. 2:15-cv-9604-RGK-MRW, 2017 WL 5957640, at *4–5 (C.D. Cal. Jan. 4, 2017) (finding reliance on ACDVs to be reasonable as a matter of law, where the dispute was not complex or prolonged and did not involve "critical documentation or third party information that the consumer reporting agency failed to include in its ACDV request"). Because Experian's actions were not objectively unreasonable, they do not rise to the level of a willful violation of the FCRA. I grant Experian's motion for summary judgment on Abernathy's claim for statutory damages based on a willful violation.

### 2. DTPA

Abernathy alleges Experian violated DTPA through its "unfair and deceptive credit reporting activities." ECF No. 1 at 8. Experian contends the DTPA does not apply here because it applies only to the lease or sale of goods or services and Abernathy has not produced any evidence of unfair or deceptive activities. Abernathy does not respond to Experian's arguments regarding this claim.

Some sections of the DTPA apply only to the lease or sale of goods and services; however, others are not necessarily so limited. *See, e.g.*, *The Bank of N.Y. Mellon fka The Bank of N.Y. v. Cape Jasmine CT Trust*, No. 2:16-cv-00248-JAD-GWF, 2016 WL 3511253, at *4–5 (D. Nev. Jun. 27, 2016) (noting certain provisions of the statute explicitly require the sale or lease of goods and services but others do not); *Kawahara v. Kennedy*, No. 3:14-cv-00012-MMD-WGC, 2015 WL 789744, at *5–6 (D. Nev. Feb. 25, 2015) (same). Because Abernathy does not allege violations of particular sections of the statute, nor elucidate in his opposition those sections he believes Experian violated, I cannot determine whether the requirement of the sale or lease of goods and services applies to his claim.

10

However, even if the DTPA did apply, Abernathy has not produced any evidence supporting his claim that Experian violated the statute, which relies on the same alleged facts (reliance on ACDVs) as his FCRA claim. Therefore, I grant Experian summary judgment on Abernathy's DTPA claim.

### B. ConServe's Motion for Summary Judgment

Abernathy brings three claims against ConServe. The first is for violating the FCRA, the second is for violating the FDCPA, and the third is for violating the DTPA. ConServe moves for summary judgment on all three claims.

#### 1. FCRA

Abernathy alleges ConServe violated the FCRA by reporting inaccurate information to Experian and failing to adequately investigate his disputes and to delete or correct the allegedly inaccurate information. ConServe contends it conducted a reasonable investigation into both of the Experian disputes, and that there were no inaccuracies in Abernathy's report that could have been found through reasonable investigation.

Section 1681s-2 sets forth the duties imposed on furnishers such as ConServe. Subsection (a) requires furnishers provide accurate information to CRAs. 15 U.S.C. § 1681s-2(a). Subsection (b) imposes investigatory obligations triggered by a notice of dispute from a CRA. After receiving a notice of consumer dispute, the furnisher must conduct an investigation of the disputed information, review all relevant information provided by the CRA, and report the results of the investigation to the CRA. *Id.* at § 1681s-2(b)(1)(A)–(C). If the investigation finds incomplete or inaccurate information, the furnisher must report those results to all the CRAs to which it provided the information and either "modify that item of information . . . delete that

item of information . . . or . . . permanently block the reporting of that item of information." *Id.* at § 1681s-2(b)(1)(D)–(E).

The FCRA creates a private right of action only for claims arising under subsection (b). *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Therefore, to the extent Abernathy's claims are based on ConServe's subsection (a) obligations, I grant summary judgment to ConServe.

Abernathy also alleges ConServe failed to conduct an adequate investigation because it continued to report the account as a paid collection account after telling him it would report it as paid in full and the various iterations of his report had collection notations in September and October and was thus misleading. ConServe responds it conducted reasonable investigations into the disputes transmitted by Experian and met its obligations under the FCRA.

A furnisher's investigation pursuant to a consumer dispute must be reasonable. *Gorman*, 584 F.3d at 1156–57. The operative question is "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Id.* at 1157. "An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Id.* at 1161.

### i. First Dispute

Abernathy's first dispute letter to Experian stated the ConServe account was "not familiar." ECF No. 29-1 at 15. Experian's ACDV stated the nature of the dispute was "001- Not his/hers. Provide complete ID." *Id.* at 22. No supporting documentation was provided. In response to this dispute, ConServe requested documentation from CSN to validate the debt, ultimately reaching out twice. ECF No. 31-1 at 36–37. CSN provided an itemized account

statement and a screenshot from its record system. *Id.* at 37. Based on this documentation, ConServe responded to the ACDV, stating the account was valid and paid in full. *Id.* at 38; ECF No. 29-1 at 22.

This was a reasonable investigation given the information provided to ConServe by Experian. Abernathy's only dispute with the information was that the account was not his. ConServe confirmed with the originator of the debt (CSN) that the account was his and updated its reporting to show that the debt had been paid. Abernathy has not produced any evidence, or made any argument, to show why this first investigation was unreasonable.

### ii. Second Dispute

The second ACDV Experian sent to ConServe stated the dispute reason as: "112 – Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information. PLEASE CONFIRM THE NEGATIVE NOTATION IN SEPTEMBER IS CORRECT. I BELIEVE THIS ACCOUNT IS MARKED IN THE WRONG MONTH." ECF No. 29-2 at 27. In response, ConServe reviewed the documentation it had on file from Abernathy's first dispute and determined the information was sufficient to respond to the second dispute. ECF No. 31-1 at 43–44. ConServe confirmed the account was a paid collection account and updated the demographic information it had on file. *Id.* It also updated the balance date from the date of its response to the first ACDV on September 7 to the date of this second response, October 6. ECF No. 29-2 at 27.

Abernathy provided no information to Experian or ConServe in his second dispute that would indicate "that the initial investigation lacked reliability or that new information was available to discover." *Drew v. Equifax Info. Servs., LLC*, 690 F.2d 1100, 1107–08 (9th Cir.

2012) (quotation omitted). Therefore, ConServe's "decision not to repeat a previously[] conducted investigation cannot have been unreasonable." *Gorman*, 584 F.3d at 1160.

The language in the ACDV did alert ConServe as to Abernathy's dispute regarding a "negative notation in September." However, there is no explanation as to what negative notation is referred to. ConServe's initial ACDV response reported that the account had been closed on August 31, 2016. ECF No. 29-1 at 22. The only notation regarding September is the "Balance Date," listed as September 7, 2016, or the date of ConServe's response. Abernathy has produced no evidence to show that a reasonable investigation based on his dispute would have found the reporting of a zero balance as of the date of ConServe's ACDV response to be inaccurate or require deletion. Therefore, I grant ConServe summary judgment on Abernathy's FCRA claim.

### 2. FDCPA

Abernathy alleges ConServe violated the FDCPA by mischaracterizing his debt, using false representations and deceptive means to collect the alleged debt, misrepresenting to him that he was required to pay the debt under false pretenses, re-reporting false information about the debt, and failing to report the debt was disputed. ConServe contends that upon learning the debt was paid, it updated Abernathy's account accordingly and only sent communications advising him that the debt had been paid.

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes the "false representation of . . . the character, amount, or legal status of any debt," "[c]ommunicating . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," and the

"use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2)(A), (8), (10).

Although unclear, it appears Abernathy's allegations rest primarily on ConServe's reporting to Experian. Abernathy contends reporting the debt as a paid collection account instead of "paid in full" is inaccurate. However, he does not dispute that the account was in collections before it was paid. Thus, reporting the account with a zero balance and as a paid and closed collection account is not inaccurate, nor is it materially misleading.[4] Furthermore, Abernathy produces no evidence to show the account was not reported as disputed. The credit reports created after both of his ConServe disputes specifically state the account information is "disputed by consumer." ECF Nos. 29-1 at 29; 29-2 at 31. To the extent his FDCPA claim relies on the reporting of the debt to Experian, I grant ConServe summary judgment.

Abernathy also alleges ConServe violated the FDCPA by sending him collection letters after the account had been paid in full. ConServe contends the three letters it sent Abernathy were not collection letters but instead were sent in response to the disputes he submitted through Experian validating the debt and informing him ConServe considered it to be paid in full. The two letters sent in September 2016 confirmed the debt had been paid in full and the third letter sent in December 2016 advised Abernathy that ConServe had already sent him documentation validating the debt. ECF No. 31-2 at 17, 24, 31.

---

[4] Abernathy's argument that ConServe promised it would report the account as "paid in full" is unavailing. The first two letters ConServe sent to Abernathy state: "If this account was credit reported, your account will be updated to read as paid in full on your credit report . . . ." ECF No. 31-2 at 17, 24. The letters do not legally obligate ConServe to use the "paid in full" language specifically, and do not show the reporting of the account as a paid collections account is inaccurate.

The letters do include the following statement: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.* Despite this language, the letters' contents show they are not attempts to collect the debt and did not mischaracterize the debt in any way. Abernathy has not shown a genuine issue of material fact as to whether ConServe violated the FDCPA. Therefore, I grant ConServe's motion for summary judgment on this claim.

### 3. DTPA

Finally, Abernathy alleges ConServe violated the DTPA "through its unfair and deceptive credit reporting activities." ECF No. 1 at 8. In particular, Abernathy claims ConServe's allegedly inaccurate reporting to Experian violated the DTPA. ConServe argues that this state law claim is preempted by FCRA.

Section 1681t(b)(1)(F) states that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." "Most district courts within the Ninth Circuit have held that [this section] preempts all state statutory and common law causes of action that are based on conduct proscribed under § 1681s-2." *Kozlowski v. Bank of Am., N.A.*, No. 1:18-cv-00131-DAD-EPG, 2018 WL 2096381, at *6 (E.D. Cal. May 7, 2018) (citing *Buraye v. Equifax*, 625 F. Supp. 2d 894, 899 (C.D. Cal. 2008)). Abernathy's allegations that ConServe furnished inaccurate information to Experian fall squarely within the responsibilities covered by § 1681s-2, and thus his state law claim is preempted. I therefore grant ConServe summary judgment on this claim.

////

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Experian Information Solutions, Inc.'s motion for summary judgment **(ECF No. 29) is GRANTED.**

IT IS FURTHER ORDERED that defendant Continental Service Group, Inc.'s motion for summary judgment **(ECF No. 30) is GRANTED.**

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of the defendants and against plaintiff Christopher Abernathy.

DATED this 9th day of June, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE